464 P.2d 982

Dorothy McCLENNEN, Appellant,

v.

Louis McCLENNEN, Appellee.

No. I CA–CIV 1027.

Court of Appeals of Arizona, Division 1.

Feb. 18, 1970.

Rehearing Denied March 26, 1970.

Review Denied April 28, 1970.

Wales, Collins & Davies, by Harold W. Wales, Roush, Mori, Feinstein & Welch, by Allen L. Feinstein, Phoenix, for appellant.

Allen, McClennen & Fels, by Robert H. Allen, Phoenix, for appellee.

HOWARD, Chief Judge.

The appellee, the plaintiff below, filed a complaint for divorce against the appellant. Appellant counter-claimed for separate maintenance but this was later amended to a separate counter-claim for absolute divorce.

The trial court awarded the appellant an absolute divorce and awarded the care, custody and control of their ten year old girl to the appellant, divided the community property, and ordered appellee to pay to the appellant child support in the amount of $200.00 per month and alimony in the sum of $1,250.00 per month, less $15,000.00 to be deducted at the rate of $200.00 per month as appellant's contribution to the payment of the community debts of the parties. Appellant maintains that the trial court erred in the manner in which it divided the community property, in failing to grant her motion for a new trial on the basis of newly discovered evidence, and in failing to take into consideration tax consequences in the granting of alimony.

The facts considered in the light most favorable to upholding the decision of the trial court are as follows. The parties at the time of trial had been married for approximately twenty-five years. The appellee was admitted to the Arizona State Bar in 1946 and since then has been continuously engaged in the practice of law in Phoenix. The trial court awarded the appellant the care, custody and control of the minor child and ordered the appellee to pay to the appellant the sum of $200.00 per month for the support of the child plus any extraordinary medical and dental expenses.

The appellee was awarded the 1967 Pontiac Grand Prix automobile, the 1967 Pontiac Firebird automobile, the 1962 Oldsmobile automobile, the interest of the parties

in the law firm of Fennemore, Craig, vonAmmon, McClennen & Udall, three life insurance policies, 1,800 shares of stock in the Colorado River Ranch, all interests in the real property known as Standford Drive property, the realty property known as the Shea Boulevard property, and his personal effects.

The appellant was awarded the 1966 Cadillac automobile, her personal clothing, furs and jewelry, and the home furnishings located in the Phoenix Towers Cooperative Apartments owned by the parties including the Baldwin piano.

Appellee was further ordered to pay to appellant's attorney attorney's fees in the sum of $6,750.00.

The court refused to dispose of the parties' interest in the Phoenix Towers property for the reason that it was held as a joint tenancy with the right of survivorship.

## DIVISION OF PROPERTY

Appellant claims that there is a three to one disparity in the net asset value between the assets distributed to the appellant and to the appellee. The appellee maintains that the evidence shows that the net value of all assets awarded to the appellee is $37,808.00 and that the net value of the assets awarded to the appellant is $41,750.00.

■ At the trial of this action the appellant's attorney did not dispute the value of any items except the valuation of appellee's capital account in the law partnership and the valuation of the Stanford Drive property. Appellant is now questioning the value of several items in addition to the capital account and the Stanford Drive property, to-wit, the valuation of the jewelry, the home furnishings and the automobiles. Having offered no evidence at the trial contrary to the values submitted to the trial court, the appellant is now foreclosed from questioning the valuation of the automobiles and jewelry. However, a question still remains as to the negative value given the the Stanford Drive proper-

ty in the sum of $1,534.00. The capital account was valued at $11,428.00.

As to the valuation of the capital account, the evidence showed that until 1968 the firm had been on an accrual basis instead of a cash basis. In 1967 an adjustment was made to the capital account of the appellee in the sum of $21,151.00, which was a reduction, in order to reflect the changing from the accrual basis to the cash basis.

■ Appellant complains that it is obvious that the capital account figure of $11,428.00 did not take into consideration any accounts receivable. The problem with the appellant's contention at this point is that the only evidence before the trial court was that the capital account was in the sum of $11,428.00. If appellant did not believe that that figure reflected the true amount of the capital account, then it was incumbent upon the appellant at the time of trial to present evidence showing the true value of the capital account. We do not believe that even if the testimony did show the amount of appellee's share of the accounts receivable at the time of the trial, it would have been proper, under the facts of this case, for the trial court to divide them between the spouses. This is so because a lawyer's accounts receivable represents what he lives on from month to month. It is his source of income and the source of the alimony and child support payments ordered by the trial court.

■ In the appellee's breakdown of the net value of the property that was awarded to each party, he claims that the trial court awarded $17,500.00 worth of the home furnishings to the appellant and $6,500.00 to the appellee. We do not know how the appellee arrived at this breakdown since at the trial the only testimony was that the total home furnishings were valued in the sum of $24,000.00. Appellant wants us then to assume that the court divided the home furnishings equally between the parties, which would mean that each party received $12,000.00 worth of household furnishings. For the sake of ar-

gument we accept this contention of the appellant and also the contention that the Stanford Drive property should not be included with a negative value and arrive at the conclusion that the appellee received $44,842.00 net value of assets and the appellant $36,250.00. But, not only should the court take into consideration the value of the community property, it should also take into consideration the total amount of the community liabilities in deciding the division of the property. Spector v. Spector, 94 Ariz. 175, 382 P.2d 659 (1963). The total unsecured community obligations amounted to $52,054.00. The appellee was ordered to pay $37,054.00 of these obligations and the appellant was ordered to pay $15,000.00 towards the obligations. Subtracting these sums from the net value of the assets given to each party the results indicate that the appellee received $7,788.00 worth of community assets and the appellant $21,250.00. Thus, the contention of the appellant that the division was uneven as to her share is not supported by the evidence.

■ The trial court is not required to divide the property evenly, only equitably. Only when this discretion has been abused will the appellate court interfere. Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1968).

## THE JOINT TENANCY PROPERTY

The evidence at the trial indicated that at the time of the trial the appellant was living in an apartment in Phoenix Towers. The apartment house is what is known as a cooperative apartment. Instead of purchasing real estate the parties purchased, as evidence of the ownership, shares in a corporation. Offered at the trial was the stock certificate showing the parties owned, as joint tenants with the right of survivorship, 362 shares of Phoenix Towers Cooperative Apartments, Inc. stock. The stock certificate is dated July 15, 1957 and entitles the parties to a proprietary lease in the apartment building. There is no indication on the certificate that the parties accepted the certificate as joint tenants with the right of survivorship and not as community property.

■ The 1962 amendment to A.R.S. § 25–318, subsec. A gives the court in a divorce case jurisdiction over the division of property held by the spouses in joint tenancy; however, in the instant case the property was acquired before the adoption of the 1962 amendment and is not affected by this amendment. DeMarce v. DeMarce, 101 Ariz. 369, 419 P.2d 726 (1966). The right of a husband and wife to hold property as joint tenants in derogation of their community property status is recognized provided that it clearly appears that the spouses agreed that the property should be taken in that manner. Collier v. Collier, 73 Ariz. 405, 242 P.2d 537 (1952); DeMarce v. DeMarce, supra. If no acceptance appears in the instruments creating the joint tenancy, acceptance of the joint tenancy may be shown by extrinsic evidence. In re Estate of Baldwin, 50 Ariz. 265, 71 P.2d 791 (1937).

■ The appellant's motion for a new trial on the basis of newly discovered evidence was founded upon her discovery of the proprietary lease on the apartment which is entered into in conjunction with the issuing of the shares of stock in the cooperative apartments. She claims that this lease on its face shows that the parties own the property as community property and not as joint tenancy with the right of survivorship. The rule is that the motion for newly discovered evidence is addressed to the trial court's discretion. Williams v. Nall, 4 Ariz.App. 416, 420 P.2d 988 (1966). Rule 59(a) (4) of the Rules of Civil Procedure, 16 A.R.S., requires that the new evidence be such as could not have been discovered with reasonable diligence at the time of trial. Blecick v. School District No. 18 of Cochise County, 2 Ariz.App. 115, 406 P.2d 750 (1966).

■ Appellant's position that this is "newly discovered evidence" is entirely without merit since at the trial of the case she herself introduced in evidence the

stock certificate to the cooperative apartments which did not contain any acceptance by the appellant and appellee of the stock certificate as joint tenants in derogation of their rights to hold the same as community property. This should have been enough to raise in the mind of the appellant some question as to whether or not the property was in fact held as joint tenancy with the right of survivorship. We believe that the appellant could have discovered prior to the time of the trial the fact that the property was not held in joint tenancy with the right of survivorship.

There is an additional reason why the trial court did not abuse its discretion in failing to grant a new trial as to the issue of the Phoenix Towers apartment. At the trial of this case, appellant consistently took the position that the property in question was held in joint tenancy with the right of survivorship. It is only when new counsel represented her at the motion for a new trial that she took the position it was community property. The party may not take a position on a motion for a new trial which is inconsistent with that which was taken by him at the trial. Heggie v. Hayes, 141 Tenn. 219, 208 S.W. 605, 3 A. L.R. 150 (1919).

### ALIMONY AND CHILD SUPPORT

The appellant introduced evidence in the trial court that she needed approximately $3,000.00 support money for herself and the minor child. The appellee's evidence was that his net monthly income after taxes amounted to $2,504.17 per month without including any income from the two trusts of which he was a beneficiary. The evidence further showed that he normally received $12,000.00 per year from the two trusts but he would not be receiving this amount of income for at least two years since the income was being applied towards a $21,000.00 debt which he incurred as a result of borrowing money from the trusts in order to meet community expenses. If this $12,000.00 per year were to be included in his income, his monthly income would show a net after taxes of $3,500.00.

Appellee also introduced evidence showing his monthly expenses to be in the sum of $5,495.00. The appellant's basic contention as to alimony and support is that she is entitled to that amount of money which will keep her in the style and manner to which she was accustomed and that she traveled in the upper strata of society in Maricopa County. There was also testimony at the trial that the parties constantly lived beyond their means. We do not think that upon a divorce the wife is still entitled to live beyond her means merely because she has done so in the past. In the final analysis, the factors to be considered in determining both alimony and child support include the needs of the wife, her ability to support herself, the ability of the husband to pay and other circumstances including their standard of living. Kennedy v. Kennedy, 93 Ariz. 252, 379 P. 2d 966 (1963).

There was testimony to the effect that at one time the wife was an expert stenographer; that she had been accepted in the College of Law at Arizona State University but had withdrawn from the school after the first examination. Considering all the evidence, we do not believe that the court abused its discretion in arriving at the amount of alimony and child support.

### TAX CONSEQUENCES

Appellant complains that the court has taken a tax advantage away from her by allowing the husband to deduct from the amount of alimony to which she is entitled the sum of $200.00 per month until the total sum of $15,000.00 has been paid. We are at a complete loss to understand this argument. It makes no difference whether the wife receives all of the alimony directly and then pays $200.00 per month on the community debts or whether her husband pays it for her since under either method, the $200.00 is taxable to her.

**400**

Appellant's answer to this reasoning is that if she received the entire amount, there might be some amounts that she pays on debts which would be tax deductible. In particular she points to certain medical expenses. We have looked at the alleged medical expenses and we find the sums to be of such insignificance that we do not feel we should give any more attention to this argument.

For the foregoing reasons the judgment of the trial court is affirmed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.